# Exhibit A

CONFIDENTIAL

## REFERRAL AGREEMENT

This Referral Agreement ("Agreement") is entered into among **Escape Productions LLC** ("Company"), a Delaware limited liability company and First Data Merchant Services Corporation ("FDMS") and TeleCheck Services, Inc. ("TeleCheck") (FDMS and TeleCheck are each a "Payment Provider" and are collectively "Payment Providers") effective July ____, 2015 ("Effective Date").

### RECITALS

A.    FDMS, together with a sponsoring bank, provides merchants the ability to establish a merchant account through which FDMS provides payment card processing products and services, including authorization, settlement and reconciliation of credit, debit and gift card transactions ("Payment Card Services"). TeleCheck provides to merchants check authorization services and products, including TeleCheck Electronic Check Acceptance® ("ECA®") warranty services, ECA verification services, check warranty services, check verification services, TeleCheck Internet Check Acceptance® services, and TeleCheck® Checks By Phone[sm] services ("TeleCheck Services"). The Payment Card Services and the TeleCheck Services are collectively referred to as the "Payment Processing Services."

B.    Company provides certain services to its members/customers ("Customers"), and desires to refer its Customers to FDMS and/or TeleCheck in contemplation of such Customers entering into written agreements with FDMS and/ or TeleCheck for the provision of the Payment Card Services and/or the TeleCheck Services ("Service Agreements").

### AGREEMENT

NOW, THEREFORE, the parties, in consideration of the following representations and covenants, the sufficiency of which is hereby acknowledged, agree to the following:

1.    <u>Term of Agreement</u>.  Subject to Section 8, this Agreement will be effective as of the Effective Date and will continue in full force and effect for a period of three (3) year(s) ("Initial Term"). Thereafter, this Agreement will automatically renew for successive terms of one (1) year (each a "Renewal Term"), unless terminated by either party upon at least thirty (30) days written notice to the other party.

2.    <u>Company Obligations</u>.  Company's obligations are as follows:

2.1    <u>Promotions and Recommendations</u>.  Company will actively promote and recommend the Payment Processing Services to its Customers. Payment Providers will be a recipient of customer referrals by Company for services similar to the Payment Processing Services. If Company desires to promote and recommend services other than Payment Processing Services to be provided by Payment Providers to Company referred Customers, the parties will use commercially reasonable efforts to negotiate in good faith the commercial terms that will apply if a Company referred Customer purchases such referred services from Payment Providers. Any such terms will be reflected in an amendment to this Agreement.

2.2    <u>Intentionally Omitted</u>.

2.3    <u>Provision of Referral Information</u>.  Company will provide the contact name, address and phone number to Payment Providers for any Customer that indicates an interest in Payment Processing Services within two (2) business days thereafter in the manner provided by Payment Providers.

2.4    <u>Intentionally Omitted</u>

2.5    <u>Company Marketing</u>.  Company's promotional efforts will be pursuant to specific terms and procedures as mutually agreed upon by the parties from time to time. Each party will obtain the prior written approval of the other parties for any marketing and promotional materials that in any way reference the other parties, their affiliates or their parent corporation, in connection with any representation, solicitation, advertising or promotion of the Payment

CONFIDENTIAL

Processing Services or the other parties. Each party will correctly identify the trademarks, service marks and registrations of the other parties, as provided by such parties, on such approved materials.

2.6   <u>Company Notice</u>.  Upon learning of any problems that a Customer referred by Company may experience with the Payment Processing Services, Company will promptly advise the applicable Payment Provider of such problems.

2.7   <u>Company Contact Person</u>.  Company will designate a contact person who will coordinate the transfer of information between Company and Payment Providers.  Such person will be available during normal business hours to respond to inquiries by Payment Providers and/or Customers.

2.8   <u>Limitation of Liability</u>.  Notwithstanding any other provision of this Agreement, each Payment Provider acknowledges and agrees that Company will have no liability whatsoever for any liabilities of referred Customers to the Payment Providers, including any liability under the Service Agreements between referred Customers and the Payment Providers.

3.   <u>Obligations of Payment Providers</u>.  Payment Providers' obligations are as follows:

3.1   <u>Customer Solicitations</u>.  Payment Providers will promptly contact referred Customers via direct mail, electronic mail, telephone or other means.

3.2   <u>Customer Service Agreements</u>.  Payment Providers will provide assistance to referred Customers that wish to obtain the Payment Processing Services.  Company understands that all Customers referred to Payment Providers hereunder are subject to Payment Providers' credit review/approval, and that Payment Providers will have the right, in their sole discretion, to refuse to enter into Service Agreements with any referred Customers.  If such referred Customers meet the requirements established by Payment Providers, Payment Providers will coordinate with such referred Customers and assist them in completing all documents, applications and/or agreements necessary for the initiation of Payment Card Services and/or TeleCheck Services, as applicable.  No Service Agreements will be effective until accepted and signed by Payment Providers.  Company will have no authority to bind a Payment Provider with respect to Service Agreements between referred Customers and a Payment Provider for the Payment Card Services and/or TeleCheck Services or otherwise.  Each Payment Provider, in its sole and absolute discretion, will have the right at any time to: (a) terminate any existing Service Agreement with any referred Customer; or (b) modify the rates or any other terms of any such Service Agreement.

3.3   <u>Payment Providers Contact Person</u>.  Each Payment Provider will designate a contact person who will coordinate the transfer of information between the Payment Provider and Company, and such person will be available during normal business hours to respond to inquiries from Company.

3.4   <u>Training</u>.  Payment Providers may train the representatives of Company regarding the Payment Processing Services, and may provide Company with marketing materials, as deemed necessary by Payment Providers, in their sole discretion, to effectively initiate contact and promote the Payment Processing Services to Customers.

3.5   <u>Pricing</u>.  Payment Providers will determine all fees that will be charged to referred Customers for the Payment Processing Services.

3.6   <u>Services and Support</u>.  Payment Providers will provide all Payment Processing Services to referred Customers, and will provide all related customer service.

3.7   <u>Use of Sponsor Banks and Names</u>.  In performing this Agreement and entering into agreements with referred Customers, Payment Providers may do so through various affiliates and sponsoring banks or use a divisional or other d/b/a name.

CONFIDENTIAL

4.    Customer Relationships.

4.1    Payment Providers Authority.  Payment Providers will have full and exclusive authority to negotiate with each referred Customer to establish, modify, terminate or extend the terms and conditions of any Service Agreement with such Customer.  Company understands and agrees that it will in no way be responsible for, have an ownership interest in, or be a party to any Service Agreements between any Payment Provider and any referred Customers, and the rights and obligations thereunder may be modified, terminated or assigned by Payment Providers, in whole or in part, in its sole discretion, subject only to specific limitations, if any, established in the applicable Service Agreements.  Nothing in this Agreement will require a Payment Provider to approve or enter into any Service Agreement with any referred Customer that does not meet the Payment Provider's credit policies or other standards, as may be amended from time to time.

4.2    Agreements with Customers.  Upon termination of the relationship between any Customer and Company, Payment Providers will not be required to, terminate its Service Agreements with any referred Customer.

5.    Fees.

5.1    Residual Fees.  FDMS and/or TeleCheck, as applicable, will pay Company fifteen percent (15%) of Net Recurring Revenue collected during a calendar month from each referred Customer that has entered into a Service Agreement with FDMS and/or TeleCheck, and that is actively using the Payment Processing Services ("Residual Fees"). For the purposes of this Section 5.1, "Net Recurring Revenue" means, for the relevant time period: (a) with respect to Payment Card Services, the total Customer-paid fees and discounts under a Service Agreement (including gift card fees), minus upfront application fees, equipment fees, and card association interchange fees, card association assessments, and other applicable card association fees; (b) with respect to TeleCheck Services, the Customer-paid fees for inquiry charges, transaction fees and monthly minimums minus TeleCheck's standard wholesale rates for such fees with respect to the merchant's standard industrial classification for its channel sales. Starting in the 2nd year of the Initial Term, the foregoing Residual Fees will not be paid for referred Customers that are referred and have entered into a Service Agreement after such date and whose usage of the Payment Processing Services actually exceeds fifty million dollars ($50,000,000) in sales volume annually (the "Exception Customers").  Notwithstanding anything in this Agreement to the contrary, the Payment Providers and Company will mutually agree in writing on a payment strategy including the amount and payment schedule of residual fees to be paid with respect to any Exception Customers.

5.2    Calculation and Payment.  The applicable Payment Providers will calculate and pay the Residual Fees (collectively, "Customer Fees") to Company on a monthly basis, within thirty (30) days from the end of the applicable calendar month, via ACH deposit into the account designated by Company in Schedule A attached hereto. The applicable Payment Providers will provide Company with a detailed report showing the calculation of Customer Fees to correspond with each monthly payment.  No Customer Fees will be paid to Company until Company has completed, signed and submitted to Payment Providers the Substitute Form W-9 attached hereto as Schedule B.

5.3    Existing Relationships.  If a referred Customer already has an existing relationship with one or more of the Payment Providers, only the Payment Providers that enter into a new written agreement with such Customer as a result of the referral will pay Company the applicable Customer Fees, and no Customer Fees will be due and payable by any Payment Provider with a pre-existing relationship with any referred Customer unless the Customer enters into a new Service Agreement with Payment Providers as a direct result of the referral by Company.

6.    Nonsolicitation Obligation.  During the Initial Term and any Renewal Term, Company shall not: (a) knowingly engage in any active solicitation of any referred Customer for services similar to or competitive with the Payment Processing Services; or (b) engage, retain or assist a third party to solicit the referred Customers pursuant to the foregoing prohibitions (the "Nonsolicitation Obligation"); provided that the Nonsolicitation Obligation shall not prohibit Company from: (a) selling or marketing services similar to or competitive with the Payment Processing Services so long as such marketing efforts are general in nature or not directed specifically and solely at referred Customers; or (b) responding to unsolicited inquiries from referred Customers.  In the event that Company receives an unsolicited inquiry from a referred Customer for services similar to or competitive with the Payment Processing Services, Company will use reasonable efforts to notify FDMS within ten (10) business days of receiving such inquiry provided that such notice to

CONFIDENTIAL

FDMS does not violate any contractual obligations between Company and the referred Customer, including but not limited to confidentiality obligations. The parties agree that if Company fails to provide such notice to FDMS, Company will not be in breach of this Agreement or liable to FDMS for any damages.

7.   <u>Compliance with Laws</u>.

7.1   <u>Payment Providers</u>.  Payment Providers will comply with all applicable laws and regulations in the performance of its respective obligations under this Agreement and their provision of Payment Processing Services to referred Customers.

7.2   <u>Company</u>.  Company will comply with all applicable laws and regulations in the performance of its obligations under this Agreement.

8.   <u>Grounds for Termination</u>.

8.1   <u>Material Breach</u>.  Any party may terminate this Agreement immediately upon written notice if any other party has failed to cure any material breach of this Agreement within thirty (30) days following written notice of such breach given by a non-breaching party.

8.2   <u>Fraud, Intentional Misrepresentation, Willful Misconduct</u>.  If any party engages in fraud, intentional misrepresentation or willful misconduct in connection with their performance under this Agreement, the other party will have the right to terminate this Agreement immediately upon written notice.

8.3   <u>Marketing Efforts</u>.  Payment Providers shall have the option of terminating this Agreement upon thirty (30) days prior written notice to Company if Company fails to provide Payment Providers with at least one referred Customer who enters into a Service Agreement with Payment Providers during any two hundred seventy (270) day period after the Effective Date.

9.   <u>Effects of Termination</u>.  Upon expiration or earlier termination of this Agreement for any reason:

9.1   <u>Cessation of Marketing Activities</u>.  Company will promptly discontinue its promotional efforts and recommendation of the Payment Processing Services, and Company will return to Payment Providers any equipment or promotional materials provided to Company.

9.2   .  <u>Fees</u>.  Payment Providers will continue to pay Fees to Company until such time as the monthly Fees payment falls below $500; provided, however, that in the event this Agreement terminates due to a default by Company or is terminated by FDMS pursuant to Section 8.1, 8.2, or in the event that Company breaches the Nonsolicitation Obligation, FDMS' obligation to pay Fees to Company will immediately cease.

10.   <u>Confidentiality</u>.  Each party acknowledges that it may disclose or learn Confidential Information about the other parties and their customers during the term of this Agreement.  "Confidential Information" will mean all proprietary, secret or confidential information or data relating to any of the parties and their business operations, including, without limitation, products or services, clients, customers or potential customers, the pricing information and marketing plans related to the Payment Processing Services, and the terms of this Agreement. Each party receiving Confidential Information, including its employees, agents, and representatives, will: (a) maintain it in confidence, except to the extent necessary to carry out the purposes of this Agreement, in which event written confidentiality restrictions will be imposed upon the party to whom such disclosures are made; (b) limit access to any Confidential Information to its employees and agents with a need-to-know in connection with this Agreement; (c) use at least the same degree of care in maintaining its secrecy as it uses in maintaining the secrecy of its own Confidential Information, but in no event less than a reasonable degree of care; and (d) upon written request of the disclosing party all Confidential Information shall be destroyed (if technically possible) in accordance with current and commercially reasonable record retention policies, using destruction protocols that are commensurate with the type of Confidential Information being destroyed.

CONFIDENTIAL

The obligations of confidentiality and restriction on use in the foregoing paragraph will not apply to any Confidential Information that a receiving party proves: (i) was already in the possession of such receiving party on a non-confidential basis prior to receipt, directly or indirectly, from the disclosing party; (ii) was subsequently learned from an independent third party free of any restriction and without breach of this Agreement; (iii) was or becomes publicly available through no wrongful act of such receiving party; (iv) was independently developed by such receiving party without reference to any Confidential Information of the disclosing party; or (v) was required to be disclosed by law.

11.    <u>General Indemnification</u>.  Each party will indemnify and hold the other parties, their affiliates, subsidiaries, parent companies, directors and officers harmless from and against any and all claims, actions, damages, penalties, expenses (including reasonable attorneys' fees and costs) and liabilities resulting from or arising out of: (i) third party claims related to such party's performance under this Agreement or related to such party's products or services, unless due to the gross negligence or intentional misconduct of any other party; and (ii) such party's use or disclosure of data provided by or related to a referred Customer.

12.    <u>Limitation of Liability</u>.  The cumulative aggregate liability of any party for all losses, claims, suits, controversies, breaches or damages for any cause whatsoever and regardless of the form of action or legal theory will be limited to the actual, direct, out-of-pocket expenses that are reasonably incurred by such other party and will not exceed one hundred thousand dollars ($100,000).

13.    <u>Exclusions</u>.  IN NO EVENT WILL ANY PARTY TO THIS AGREEMENT OR ANY OF ITS DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR SUBCONTRACTORS BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY, OR OTHER LEGAL OR EQUITABLE THEORY FOR LOST PROFITS, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES OR THE LIKE, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR WHETHER SUCH PARTY OR ANY ENTITY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

14.    <u>Disclaimer of Warranties</u>.  EACH PAYMENT PROVIDER MAKES NO REPRESENTATIONS OR WARRANTIES WITH REGARD TO THE PAYMENT PROCESSING SERVICES, AND DISCLAIMS ALL EXPRESS OR IMPLIED WARRANTIES, OBLIGATIONS AND LIABILITIES, ARISING BY LAW OR OTHERWISE, WITH RESPECT TO THE FOREGOING, INCLUDING ANY (A) IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; (B) IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE; OR (C) IMPLIED WARRANTY OF NON-INFRINGEMENT.

15.    <u>Governing Law; Waiver of Jury Trial</u>.  This Agreement will be construed in accordance with and governed by the laws of the State of New York, except as to its principles of conflicts of law.  THE PARTIES IRREVOCABLY WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDINGS INVOLVING ANY CLAIM RELATING TO OR ARISING UNDER THIS AGREEMENT.

16.    <u>Assignment</u>.  Neither this Agreement nor any rights, duties or obligations under it are assignable by Payment Providers or by Company, in whole or in part, without the consent of the other party; <u>provided</u>, <u>however</u>, that the respective rights, duties and obligations of Payment Providers and Company hereunder may be assigned, in whole or in part, to: (i) an affiliate; or (ii) in the event of a sale of all or substantially all of the assets or capital stock of such party. Subject to the foregoing, all of the terms and provisions hereof will be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

17.    <u>Publicity and Marketing Materials</u>.  Each party agrees that no press release, public notice or disclosure of the terms and conditions of this Agreement will be made without the prior written consents of the other parties. Notwithstanding anything to the contrary in this Agreement, Payment Providers or its ultimate parent company, First Data Corporation ("First Data"), may use Company's name publicly indicating that Company has entered into a contractual relationship with Payment Providers. Further, Company agrees to allow Payment Providers the right to use Company's name and logo on Payment Providers' or First Data's websites.

CONFIDENTIAL

18.   <u>Notices</u>.  Any notice or other communication that is required or desired to be given under this Agreement will be written and will be deemed validly given if delivered personally, sent by facsimile with confirmation of receipt, sent by overnight courier with proof of receipt, or mailed by certified or registered mail, addressed to the party to whom it is to be given at the address set forth below. Any such notice will be effective upon receipt. Any party may, by written notice given as provided above, change the address set forth below or the person to whose attention notices will be given.

If to Payment Providers:

    First Data Merchant Services Corporation
    5775 DTC Blvd, Suite 100 North
    Greenwood Village, CO 80111
    Attn:  General Counsel
    Fax:  303-967-8292

If to Company:

    Escape Productions LLC
    c/o Bennett Specter
    Specter, Streeter & Company
    2001 Wilshire Blvd, Suite 400
    Santa Monica, CA 90403
    Fax:  310-201-7990

19.   <u>Relationship of the Parties</u>.  This Agreement will not constitute, give effect to or otherwise imply a joint venture, partnership, agency or formal or informal business organization of any kind. The parties are acting hereunder as independent contractors.  Nothing in this Agreement will restrict Payment Providers' ability to act as an agent, partner, joint venturer or independent contractor for or with any other entity to act on its own behalf in connection with the provision of the Payment Processing Services or otherwise.

20.   <u>Entire Agreement; Amendment; Waivers; Severability</u>.  This document contains the entire agreement between the parties and supersedes any previous understandings, commitments or agreements, oral or written, with respect to agreement between the parties.  No alteration of or amendment to this Agreement will be effective unless in writing and signed by an authorized representative of each party.  No failure on the part of any party to exercise or delay in exercising any right hereunder will be deemed a waiver thereof, nor will any single or partial exercise preclude any further or other exercise of such or any other right.  In case any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

21.   <u>Counterparts.</u>  This Agreement may be executed by the parties in one or more counterparts, and each of which when so executed will be an original, but all such counterparts will constitute one and the same instrument.

22.   <u>Survival</u>.  The following provisions will survive the termination of this Agreement: Sections 2.8, 4, 9, 10, 11, 12, 13, 14, and 22.

**[Signature page to follow]**

CONFIDENTIAL

Execution and delivery of this Agreement by exchange of scanned or facsimile copies bearing the signature of a party hereto shall constitute a valid and binding execution and delivery of this Agreement by such party. Each party represents to the others that each has the full right, power and authority to enter into this Agreement and to perform its respective obligations hereunder. The parties to this Agreement have caused it to be executed by their duly authorized officers as of the Effective Date.

TELECHECK SERVICES, INC.

By: _____

Printed Name: Christopher Foskett

Title: EVP

Date: 7/21/15

FIRST DATA MERCHANT SERVICES CORPORATION

By: _____

Printed Name: Joseph Profeta

Title: SVP

Date: 7/21/15

ESCAPE PRODUCTIONS LLC
(Company)

By: _____

Printed Name: _____

Title: _____

Date: _____

CONFIDENTIAL

## SCHEDULE A
## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSITS

Company or Individual Name(s):_____
(Name as stated on Bank Account)

Address:_____

Complete Email Address (**Required**):_____

I (we) hereby authorize First Data Merchant Services Corporation and its affiliates ("PAYMENT PROVIDERS") to initiate debit and/or credit entries to my (our) account indicated below, at the depository financial institution named below, hereinafter called DEPOSITORY, and to debit and/or credit the same such account. I (we) include my (our) authorization for PAYMENT PROVIDERS to reverse or debit any credit entries made in error to my (our) account. I (we) acknowledge that the origination of ACH transactions to my (our) account must comply with the provision of U.S. law.

Depository Name:_____     Branch:_____

City and State:_____     Phone number:_____

Routing Number:_____     Account Number:_____

This authorization is to remain in full force and effect until PAYMENT PROVIDER has received written notification from me (or either of us) of its termination in such time and manner as to afford PAYMENT PROVIDERS and DEPOSITORY a reasonable opportunity to act on it.

Name(s):_____
(Please Print)

Date:_____     Signature:_____

Date:_____     Signature:_____

---

ATTACH A VOIDED CHECK HERE
(DEPOSIT SLIPS WILL **NOT** BE ACCEPTED FOR CHECKING ACCOUNT DEPOSITS)

---

## CANCELLATION POLICY

To cancel this authorization, please sign a document indicating the requested cancellation, including the date, and fax to First Data Merchant Services Corporation at (303) 488-8355 (Denver Supported) or (402) 222-8301 (Omaha Supported). Please do not close your account before your direct deposit has been stopped.

## PLEASE RETAIN A COPY OF THIS AUTHORIZATION FOR YOUR RECORDS

Parcells/sam/072115

CONFIDENTIAL

**SCHEDULE B**
**Substitute Form W9**

# Exhibit B

CONFIDENTIAL

**AMENDMENT TO REFERRAL AGREEMENT**
**BY AND BETWEEN**
**ESCAPE PRODUCTIONS, LLC,**
**FIRST DATA MERCHANT SERVICES LLC,**
**AND**
**TELECHECK SERVICES, INC.**

This Amendment ("Amendment") is made and entered into by and between Escape Productions LLC ("Company"), First Data Merchant Services LLC (formerly known as First Data Merchant Services Corporation) ("FDMS"), and TeleCheck Services, Inc. ("TeleCheck") (FDMS and TeleCheck are each a "Payment Provider" and are collectively "Payment Providers") as of this 8th day of March, 2017, to amend and supplement that certain Referral Agreement between the parties dated July 21, 2015 (the "Agreement").

In consideration of the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and Payment Providers do hereby agree as follows:

I.    **Amendment of parties to the Agreement.** The Agreement will be amended by the addition of Money Network Financial, LLC ("Money Network") as a party to this Agreement. FDMS, TeleCheck and Money Network are each a "Payment Provider" and are collectively "Payment Providers".

II.   **Amendment Recital A of Agreement.** Recital A of the Agreement is hereby deleted in its entirety and replaced with the following:

"A.    FDMS, together with a sponsoring bank, provides merchants the ability to establish a merchant account through which FDMS provides payment card processing products and services, including dynamic currency conversion (DCC), authorization, settlement and reconciliation of credit, debit and gift card transactions ("Payment Card Services"). TeleCheck provides to merchants check authorization services and products, including TeleCheck Electronic Check Acceptance® ("ECA®") warranty services, ECA verification services, check warranty services, check verification services, TeleCheck Internet Check Acceptance® services, and TeleCheck® Checks By Phone services ("TeleCheck Services"). Money Network provides to merchants a payroll distribution program and related services whereby participating employees receive payment for wages and/or other compensation through paycards or Money Network checks ("Money Network Services"). The Payment Card Services, the TeleCheck Services, and the Money Network Services are collectively referred to as the "Payment Processing Services."

III.  **Amendment of Recital B.** Recital B of the Agreement is hereby deleted in its entirety and replaced with the following:

"Company has a personal or business relationship with certain parties or entities ("Customers"), and desires to refer its Customers to Payment Providers in contemplation of such Customers entering into written agreements with Payment Providers for the provision of the Payment Card Services, TeleCheck Services and/or Money Network Services (collectively, "Service Agreements"). Company will refer Customers, and Payment Providers may choose to provide such services as it reasonably deems appropriate. If Payment Provider deems the referred Customer to be an appropriate referral, such referred Customer will be added to Exhibit A and, subject to the execution of Service Agreements by Payment Providers and such referred Customer, Company will be eligible for payment of Residual Fees under this Agreement. Exhibit A will be updated from time to time by written amendments signed by both parties."

CONFIDENTIAL

IV.   **Amendment of Section 1, Term of Agreement.**  Section 1 of the Agreement is hereby amended as follows:

The term of this Agreement is hereby extended for an additional five (5) years from the date of this Amendment. Thereafter, the Agreement shall continue as set forth in the Agreement until and unless terminated by either party as set forth in the Agreement.

V.   **Amendment of Section 3.2, Customer Service Agreements.**  Section 3.2 of the Agreement is hereby deleted in its entirety and replaced with the following:

"3.2    Customer Service Agreements.  Payment Providers will provide assistance to referred Customers that wish to obtain the Payment Processing Services.  Company understands that all Customers referred to Payment Providers hereunder are subject to Payment Providers' credit review/approval, and that Payment Providers will have the right, in their sole discretion, to refuse to enter into Service Agreements with any referred Customers in which event, Company may introduce Customer to another payment provider.  If such referred Customers meet the requirements established by Payment Providers, Payment Providers will coordinate with such referred Customers and assist them in completing all documents, applications and/or agreements necessary for the initiation of Payment Card Services, TeleCheck Services, and/or Money Network Services, as applicable.  No Service Agreements will be effective until accepted and signed by Payment Providers.  Company will have no authority to bind a Payment Provider with respect to Service Agreements between referred Customers and a Payment Provider for the Payment Card Services, TeleCheck Services, and/or Money Network Services or otherwise.  Each Payment Provider, in its sole and absolute discretion, will have the right at any time to: (a) terminate any existing Service Agreement with any referred Customer; or (b) modify the rates or any other terms of any such Service Agreement."

VI.   **Amendment of Section 3.4, Training.**  Section 3.4 of the Agreement is hereby deleted in its entirety and replaced with the following:

"3.4    Training.  When requested by the Company, Payment Providers may train the representatives of Company regarding the Payment Processing Services, and may provide Company with marketing materials, as deemed necessary by Payment Providers, in their sole discretion, to effectively initiate contact and promote the Payment Processing Services to Customers.  Notwithstanding the foregoing, Company representatives are not required to undergo formal training however."

VII.   **Amendment of Section 3.6, Services and Support.**  Section 3.6 of the Agreement is hereby deleted in its entirety and replaced with the following:

"3.6    Services and Support.  Payment Providers will make available and, if acceptable to Customer, provide all Payment Processing Services to referred Customers, and will provide all related customer service."

VIII.   **Amendment of Section 5.1, Residual Fees.**  Section 5.1 of the Agreement is hereby deleted in its entirety and replaced with the following:

"5.1    Residual Fees.  FDMS, TeleCheck or Money Network, as applicable will pay Company fifteen percent (15%) of Net Recurring Revenue collected during a calendar month from each referred Customer that has entered into a Service Agreement with FDMS, TeleCheck or Money Network and that is actively using the Payment Processing Services (sometimes referred to in the Agreement and this Amendment as "Residual Fees" or "Fees").  For purposes of this Section 5.1, "Net Recurring Revenue" means, for the relevant time period: (a) with respect to Payment Card Services and Money Network Services, the total Customer paid fees and discounts under a Service Agreement (including gift card fees), minus upfront application fees, equipment fees, and card association interchange fees, card association assessments, and other applicable card association fees; (b) with respect to TeleCheck Services, the total Customer paid

CONFIDENTIAL

fees for inquiry charges, transaction fees and monthly minimums minus TeleCheck's standard wholesale rates for such fees with respect to the merchant's standard industrial classification for its channel sales.

The Payment Providers agree that neither they nor their affiliates will introduce any new services or products to the Customers that are not currently specified in the Agreement until such a time as the parties hereto have (1) mutually agreed on the amount and the calculation of the residual fee with respect to the sale of those additional services and products to the Customers, and (2) fully executed an amendment to the Agreement to reflect those amounts. The parties agree to work in good faith and in a timely fashion to determine those amounts/residual fees."

IX.   **Amendment of Section 7, Compliance with Laws.**  Section 7 of the Agreement is hereby deleted in its entirety and replaced with the following:

"7.   Intentionally Omitted."

X.   **Amendment of Section 8.3, Marketing Efforts.**  Section 8.3 of the Agreement is hereby deleted in its entirety and replaced with the following:

"8.3   Intentionally Omitted."

XI.   **Amendment of Section 12, Limitation of Liability.**  Section 12 of the Agreement is hereby deleted in its entirety and replaced with the following:

"12.   Limitation of Liability.  The cumulative aggregate liability of any party for all losses, claims, suits and controversies, breaches or damages for any cause whatsoever and regardless of the form of action or legal theory will be limited to the actual, direct, out of pocket expenses that are reasonably incurred by such other party and will not exceed one hundred thousand dollars ($100,000.00); provided, however, this limitation will not apply to FDMS', Money Network's and or TeleCheck's obligation to pay Fees, including (i) Fees that are due or would otherwise become due during the Term of this Agreement, (ii) Fees that are ordered to be paid in the event of a breach of this Agreement for the nonpayment of such Fees, or (iii) Fees that are due after termination pursuant to Section 9.2 of this Agreement."

XII.   **Amendment of Section 18, Notices.**  Section 18 of the Agreement is revised with respect to the address for Company as follows:

"If to First Data Merchant Services LLC:
     Attn: Legal Department
     First Data Merchant Services LLC
     6855 Pacific Street
     Omaha, Nebraska 68106

If to TeleCheck Services, Inc.:
     Attn: Legal Department
     First Data Merchant Services LLC
     6855 Pacific Street
     Omaha, Nebraska 68106

If to Money Network Financial LLC:
     Attn: Legal Department
     First Data Merchant Services LLC
     6855 Pacific Street
     Omaha, Nebraska 68106

CONFIDENTIAL

If to Company:

Escape Productions LLC
PO Box 1931
Palm City, Florida 34991"

**XIII.    Agreement Confirmation.**  Except as otherwise amended hereby, the Agreement is hereby ratified in all respects and shall remain in full force and effect.

Executed:

Escape Productions LLC
("Company")

By: _____

Printed Name: Rocco Gardner

Title: CEO

Date: _____ 3.28.2017 _____

First Data Merchant Services LLC
("FDMS")

By: _____   J. Profeta

Digitally signed by Joseph Profeta, SVP
DN: cn=Joseph Profeta, SVP, o=First Data
Merchant Services, ou,
email=joseph.profeta@firstdata.com,
c=US
Date: 2017.03.29 12:25:33 -04'00'

Printed Name ___ Joseph Profeta ___

Title: ___ SVP ___

Date: ___ 3/29/17 ___

TeleCheck Services, Inc.
("TeleCheck")

By: _   J. Profeta

Digitally signed by Joseph Profeta, SVP
DN: cn=Joseph Profeta, SVP, o=First
Data Merchant Services, ou,
email=joseph.profeta@firstdata.com,
c=US
Date: 2017.03.29 12:26:07 -04'00'

Printed Name: ___ Joseph Profeta ___

Title: ___ SVP ___

Date: ___ 3/29/17 ___

Money Network Financial, LLC
("Money Network")

By: _____

Printed Name: ___ Chris Fescu ___

Title: ___ EVP ___

Date: ___ 3/29/17 ___

CONFIDENTIAL

EXHIBIT A TO REFERRAL AGREEMENT

REFERRED CUSTOMERS

Seminole Tribe of Florida Council and all affiliates;

Seminole Tribe of Florida Inc. and all affiliates;

Hard Rock International Incorporated and all affiliates;

Seminole Tribe of Florida d/b/a Seminole Gaming;

Seminole Hard Rock Hotel & Casino – Hollywood: 1 Seminole Way, Hollywood, Florida.

Seminole Hard Rock Hotel & Casino – Tampa: 5223 N. Orient Road, Tampa, Florida.

Seminole Indian Casino - Hollywood: 4150 N. State Road 7, Hollywood, Florida.

Seminole Indian Casino – Coconut Creek: 5550 NW 40th Street Coconut Creek, Florida.

Seminole Indian Casino - Immokalee: 506 South 1st Street, Immokalee, Florida.

Seminole Indian Casino Brighton: Route 6, Box 611, Okeechobee, Florida.

Seminole Indian Casino – Big Cypress: 30013 Josie Billie Hwy, Clewiston, Florida.

Grand River Enterprises Six Nations Ltd and its affiliates

Jukasa Motor Speedway and all affiliates

MontHill Golf and Country Club and all affiliates

Jukasa Recording Studios and Editing Suite and all affiliates

Soho House and all affiliates

Virgin Group and all affiliates

# Exhibit C

CONFIDENTIAL

**AMENDMENT  NO. 2 TO REFERRAL AGREEMENT**
**BY AND BETWEEN**
**ESCAPE PRODUCTIONS, LLC,**
**FIRST DATA MERCHANT SERVICES LLC,**
**TELECHECK SERVICES, INC.,**
**AND**
**MONEY NETWORK FINANCIAL, LLC**

This Amendment No. 2 ("Amendment") is made and entered into by and between Escape Productions LLC ("Company"), First Data Merchant Services LLC, ("FDMS"), TeleCheck Services, Inc. ("TeleCheck"), and Money Network Financial, LLC ("Money Network") (FDMS, TeleCheck, and Money Network are each a "Payment Provider" and are collectively "Payment Providers") as of this  4th  day of October, 2017, to amend and supplement that certain Referral Agreement between the parties dated July 21, 2015 (as amended, the "Agreement").

In consideration of the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and Payment Providers do hereby agree as follows:

I.    **Amendment of Section 5, Equipment Fee.**

"5.1.1   Clover Equipment Fee.  Payment Provider will pay Company a one-time payment of one hundred dollars ($100.00) for each Clover device (other than Clover Go readers) that a referred Customer purchases under its Service Agreement ("Clover Equipment Fee")."

II.   **Amendment of Section 5.2., Calculation and Payment.**  Section 5.2 of the Agreement is hereby deleted and replaced as follows:

"5.2    Calculation and Payment.  The applicable Payment Providers will calculate and pay the Clover Equipment Fee and Residual Fees (collectively, "Customer Fees") to Company on a monthly basis, within thirty (30) days from the end of the applicable calendar month, via ACH deposit into the account designated by Company in Schedule A attached hereto.  The applicable Payment Providers will provide Company with a detailed report showing the calculation of Customer Fees to correspond with each monthly payment.  No Customer Fees will be paid to Company until Company has completed, signed and submitted to Payment Providers the Substitute Form W-9 attached hereto as Schedule B.  ."

III.  **Amendment of Exhibit A Referred Customers.**  Exhibit A of the Agreement is hereby amended with the addition of the following:

Birley Group and Affiliates
Caprice Holdings and Affiliates
Hong Kong Shanghai Group (including Peninsula Hotels)

IV.   **Agreement Confirmation.**  Except as otherwise amended hereby, the Agreement is hereby ratified in all respects and shall remain in full force and effect.

[Signature Page Follows]

**CONFIDENTIAL**

Executed:

Escape Productions LLC
("Company")

By: _____

Printed Name: Rocco Gardner

Title: CEO

Date: _____October 3, 2017_____

First Data Merchant Services LLC
("FDMS")

Digitally signed by Joseph
Profeta
DN: cn=Joseph Profeta, o=First
Data Merchant Services, ou,
email=joseph.profeta@firstdat
a.com, c=US
Date: 2017.10.04 13:54:41
-04'00'

By: _____

Printed Name: _____Joseph Profeta_____
_____SVP_____

Title: _____

Date: _____10/4/17_____

TeleCheck Services, Inc.
("TeleCheck")

By: _____

Digitally signed by Joseph Profeta
DN: cn=Joseph Profeta, o=First Data
Merchant Services, ou,
email=joseph.profeta@firstdata.com, c=US
Date: 2017.10.04 13:55:08 -04'00'

Printed Name: _____Joseph Profeta_____

Title: _____SVP_____

Date: _____10/4/17_____

Money Network Financial, LLC
("Money Network")

By: _____

Printed Name: _____Tal Clark_____

Title: _____SVP, Money Network_____

Date: _____10/11/17_____

CONFIDENTIAL

EXHIBIT A TO REFERRAL AGREEMENT

REFERRED CUSTOMERS

Seminole Tribe of Florida Council and all affiliates;

Seminole Tribe of Florida Inc. and all affiliates;

Hard Rock International Incorporated and all affiliates;

Seminole Tribe of Florida d/b/a Seminole Gaming;

Seminole Hard Rock Hotel & Casino – Hollywood: 1 Seminole Way, Hollywood, Florida.

Seminole Hard Rock Hotel & Casino – Tampa: 5223 N. Orient Road, Tampa, Florida.

Seminole Indian Casino - Hollywood: 4150 N. State Road 7, Hollywood, Florida.

Seminole Indian Casino – Coconut Creek: 5550 NW 40th Street Coconut Creek, Florida.

Seminole Indian Casino - Immokalee: 506 South 1st Street, Immokalee, Florida.

Seminole Indian Casino Brighton: Route 6, Box 611, Okeechobee, Florida.

Seminole Indian Casino – Big Cypress: 30013 Josie Billie Hwy, Clewiston, Florida.

Grand River Enterprises Six Nations Ltd and its affiliates

Jukasa Motor Speedway and all affiliates

MontHill Golf and Country Club and all affiliates

Jukasa Recording Studios and Editing Suite and all affiliates

Virgin Group and all affiliates

Soho House UK Limited and Affiliates

SHG Acquisition (UK) Limited and all Affiliates

Cowshed Products Limited

Soho House West Hollywood LLC

Soho House U.S. Corp

Birley Group and Affiliates

Caprice Holdings and Affiliates

New World Development Company Limited

Ultra Enterprises Inc. (Ultra Festivals)

CONFIDENTIAL

Aman Resorts Group Ltd

HSH Management Services Limited and Affiliates (Hong Kong Power / Peninsula Hotels and more)

Cathay Pacific Limited

Swire Pacific Limited

Fair Financial Corp.

Strategic Group (who own Tao, Avenue, Marquis, Beauty & Essex, Artichoke Pizza,
and operate The Dream Hotels in New York, Vegas, Australia and Los Angeles.)

Tao Group

Sixty Collective and all affiliates

The Spare Room, Winsome and Genghis Cohen Restaurants and Bars all in Los Angeles.

Nick Mathers Bars and Restaurants including The Everleigh, Ruby's Cafe, Little Ruby's, Kingswood and Goldie's in New York.

Solo Agency and Promoters UK (Isle of Wight festival)

SH Group Operations LLC (including 1 Hotels)

No Name Restaurant and Bar, Los Angeles

# Exhibit D

# Assignment and Assumption Agreement

Escape Productions LLC (**Company**) hereby assigns to Indigitech, Inc. (**Assignee**) all of its rights under the Referral Agreement dated July 21, 2015 (as amended, the **Agreement**) by and among Company, First Data Merchant Services LLC (**FDMS**), TeleCheck Services, LLC (formerly known as TeleCheck Services, Inc.) (**TeleCheck**), and Money Network Financial, LLC (**Money Network**) (FDMS, TeleCheck, and Money Network are each a **Payment Provider**, and collectively **Payment Providers**). This Assignment and Assumption Agreement will become effective as of the last date signed below (**Effective Date**).

The parties agree:

1. Assignee hereby assumes and agrees to perform all obligations of Company set forth in the Agreement.

2. Assignee hereby assumes any and all further obligations or claims relating to or arising under the Agreement occurring following the Effective Date, including any trailing activities.

3. For notice purposes under the Agreement, Assignee's contact information shall be as follows:

   R. Gardner
   Indigitech, Inc.
   3375 South Rainbow Boulevard #81710
   SMB#46351
   Las Vegas, Nevada 89146
   USA

[Signatures on Following Page]

**Authorized Signatures:**

**Indigitech, Inc.**
(Assignee)

By: _____
Name: ROLAND GARDNER
Title: CEO
Dated: 06/19/21

**Escape Productions LLC**
(Company)

By: _____
Name: ROLAND GARDNER
Title: CEO
Dated: 06/19/21

Consented to by:

**First Data Merchant Services LLC**
(FDMS)

By: _____
    Joseph Profeta
    855EAAC90E5D4D4...

Name: Joseph Profeta

Title: Chief Sales Officer

Dated: 6/27/2023

**TeleCheck Services, LLC**
(TeleCheck)

By: _____
    Randy Ly
    527226AD164A444...

Name: Randy Ly

Title: Vice President Risk Management

Dated: 6/27/2023

**Money Network Financal, LLC**
(Money Network)

By: _____
    Nigel Andre
    58B6BD65E60E444...
Name: Nigel Andre
Title: SVP Prepaid
Dated: 6/27/2023